Mr. Grimm, whenever you're ready. Your Honors, and may it please the Honorable Court, I'm Andrew Grimm on behalf of Plaintiff Emily Nwosuocha released a song with unique musical qualities on YouTube, SoundCloud, and other locations. And after he released it, comments from independent third parties on his YouTube account alerted him that another song had identical musical qualities. So after listening to himself, he consulted with legal counsel and consulted a musicologist. And they confirmed that the song also had identical musical qualities that were something unique, something they'd never heard before. Note, there's a quirk in copyright law, however. Some cultures distinguish between a singer and a songwriter. Mostly Western culture and other cultures don't. And so in our copyright law, we distinguish between a musical work copyright and a sound recording copyright. Mr. Nwosuocha, per se, registered a copyright, received it. But he checked the wrong box in an administrative form and received only at that time a sound recording copyright. But there's no dispute that Mr. Nwosuocha made both the sound recording and the musical work. So when he came to court, there was a dispute over the registration issue. He had Southern District of New York cases on his side about the registration. There was no published appellate authority. In fact, no appellate authority that either side's counsel could find anywhere in the country, published or unpublished. The trial court dismissed the case and an unpublished opinion of this honorable court affirmed. I mean, when it's clear from the statute what a requirement is, I don't know that the absence of appellate authority is something that really cuts in their favor. Yeah, Your Honor. Well, I think there's an issue that wasn't addressed in the unpublished order, which is the 411B. And there's lots of, but we're not disputing the fees. There are Southern District of New York cases. Sorry, we're not disputing that. We're saying the Southern District of New York has cases that supported his position. That's an objectively reasonable position. But I think the bigger issue is that the bigger issue here is awarding almost $300,000 against someone who makes $80,000 a year, when the two Supreme Court cases on point are directly concerned about exorbitant fees, where Fogarty's saying the difference that both the starving artist and the corporate behemoth can be involved in a case. Wouldn't you agree, sir, that the district judge carefully considered the disparate financial conditions of the parties? And not only did he reduce across the board the number of hours and the fees sought, but he also looked at the total amount sought and reduced it further. He did consider that. And why should we disrupt those findings? I respectfully disagree, Your Honor. I don't think he considered it. What the judge said is that certain types of fees were not allocatable. What the district court did not consider was the financial impact upon the party. That was not considered. So it sounds like a big reduction. But as a practical matter, what this district court did is going to put someone in bankruptcy, make him unable to care for those he's caring for, all because of a technical issue on copyright, where there's no prevailing party. Again, I would point out, they have not prevailed. The Second Circuit's published opinion. Counsel, before we go down that road on prevailing party, is that argument preserved before us? Yes, it is, Your Honor. So they argue it's waived that's incorrect. A waiver is an affirmative. Well, I read the transcript where it looks like you say the reason they're here is because they won. Sorry, which transcript? Transcript in front of the district court, right? The district court never held a hearing in this case.  Well, then I'll find it for you then. Maybe it's in your briefing. So you're saying that you did not concede that they were the prevailing parties. The issue of prevailing party wasn't raised below. The Supreme Court's very clear. There's a difference between a forfeiture and a waiver. A forfeiture means the issue was not raised and disputed. A waiver is an affirmative, intelligent, knowing assertion. I don't dispute that. Does that matter here, whether you forfeited? Are you saying you forfeited but didn't waive, or are you saying you did neither? Well, there was an issue raised, which was degree of success. And so degree of success, in my view, preserves that issue, but moreover, even so, forfeiture on a purely legal issue. Now, the answering brief says, well, manifest injustice. That is a manifest injustice to award $300,000, destroy someone's life. That's what you're doing here. You're destroying someone's life for losing on a technicality where the merits have not been decided. Published Second Circuit authority says if it's not a preclusive judgment and you can come back to court, which is well-established in this situation, then at that point, you're not a prevailing party. All right. Well, let me tell you where I did find that. This is appendix. That's the second appendix. They're numbered, strangely, at 170. It's a brief from the district court. And it says the degree of success obtained can't be determined just on who won. Quote, rather, the very reason that defendants can seek fees at all is that defendant won, i.e. that the prevailing party, as the prevailing party, it may seek fees at all. How is that not a concession that they're the prevailing party? The issue wasn't raised and litigated, Your Honor. But even so, the district court here was expressly briefed on two additional factors that are considered by the Eighth Circuit and the Ninth Circuit as part of the test. The Eighth Circuit considers the purpose of the Cochrane Act, not in the abstract, but as an express factor. And here, although the district court used those words, it actually ignored Fogarty on what those purposes are. What the Supreme Court said in a unanimous opinion, Fogarty, in 1994, is that there are strong interests on both sides in Cochrane. And therefore, the most fundamental purpose that you need is clarity in the law. So if clarity is advanced by it, and here we have SDNY decisions that are saying that if you are an undisputed owner of a musical work, you can proceed with your case. So I know that the unpublished decision of the Second Circuit said otherwise, but there's still no published authority. We have district courts saying that. This is not a clear area. But what the district court was expressly briefed on is the chilling effect factor, and it ignored it. It did not address relative financial strength in the way that the Ninth Circuit has done again and again in published authority. So then the appropriate thing to do, in fairness to this client, is to either acknowledge that it's something that the Second Circuit thinks is a relevant consideration and vacate and remand. I just want to be clear. Is your argument that the district court failed to consider your client's financial condition at all, or that the award was too high, even though it did consider it? There's different things, different types of errors. So they're both relevant. So the Ninth Circuit's— Which is your argument? Both. Both, Your Honor. How can it be both? I mean, either it did or it didn't in the first step. And the alternative, if it didn't? No. So relative financial consideration is a factor you consider whether to award fees. It's also a factor in the amount of fees. So what the district court did is it said, sure, I'm not going to award fees for an appeal. I'm not going to award fees for those. But those are barred by legal considerations. What it didn't then do, which district courts in the SDNY do all the time throughout the country, is then look at, well, what's the appropriate amount? We cite numbers of decisions where the amount is something like 30,000, 40,000 for a similar procedural posture. Let me stop you. The district, he said he was considering financial means, and then he reduced the award by 25 percent, as Judge Matsumoto just noted. So I don't understand your answer to the first part of the question, that the district court failed to consider financial means at all. Well, in the— How can that be when— There's factors that you consider. So there's the four Fogarty factors, which are objective unreasonableness, frivolousness, special circumstances that require compensation deterrence, motivation. And so the district court didn't give any special circumstances here. The district court ignored the declaration and the financial considerations at that stage of deciding whether to award fees. So some of the evidence of financial means the district court failed to consider. It didn't—well, no, because there's two separate steps to a fee award. You decide whether to award fees, then the amount. Right. So one of the— He did look at the financial disparities between the two parties. The judge noted that the defendants were primarily, you know, successful entertainers. He considered the $80,000 per year salary that the plaintiff had. And the defendants—he refused to accept the defendant's argument that financial status in the party should not be considered. He did consider them, right? He just then applied the reduction. So, Your Honor, there's a doctrinal distinction between whether to award fees and the amount to award them. Right. And he found that the position of your client was not objectively reasonable and that fees were warranted. So consideration of financial factors in the Ninth Circuit is a mandatory consideration there. And on that, he completely ignored—so if a district—yes, our position is he's wrong on that. If a district court issues an order that says this is an okay position and you come to court and rely upon that district court, so if we relied upon something you ordered, is that objectively unreasonable to rely on another case? You're relying on a Ninth Circuit case? No, I'm saying SDNY decisions adopted the position that my client adopted in merits. So is that objectively unreasonable to rely upon what federal judges say in future cases? He looked also at the timing of the plaintiff's lawsuit. Why would the timing matter? It's within the limitations. There's nothing in there that suggests that. He completely ignored the declaration. Well, he was aware of the publication of the song, but he waited until the song became very successful and there was media attention and the artist whom he was suing gained some financial success. Then he brought the suit. On what facts? There's no facts in there. There's literally nothing cited. He cites nothing. There's nothing in this record that supports it. I know you read the opinion. If you go through the record, there's nothing that supports that. It's complete speculation. He completely ignores the declaration. It's not in there. There's literally nothing. First of all, it's blatantly not true. There's no citation. Okay, counsel, you're reserved two minutes for rebuttal. Okay. Mr. Davis. Thank you, Your Honors. May it please the Court. My name is Jonathan Davis, and I represent the defendant's appellee's lead counsel, and I will be speaking for the entire group. There are three absolute truths that have to be accepted here. Plaintiff did not have a copyright registration. He filed a copyright action without one, and he lost the case. There are consequences when that happens. There are also two very stunning facts that the Court should consider, and that is Mr. Plaintiff created his song in 2016. In the nine years from then to now, he has still never filed a proper copyright registration. And in the five years since he filed his action, he has still not filed a proper copyright registration. Now, Mr. Grimm likes to go on about the underlying merits of the case and the claim that there was an infringed copyright here, but that this case was dismissed because of a technicality. He always had the right to file the proper registration and to pursue this case. They have never done so. And there is good reason for that. There was never a case to begin with, just as Judge Marrero determined years ago. And that was not only that there was no registration. He also determined that the works were not substantially similar. The only similarity between them was the non-protectable word, America. The lyrics weren't the same. The music wasn't the same. And what has happened here? Plaintiff has forced the defendants to defend this action for years and incur hundreds of thousands of dollars. Would things be different, counsel, if there's the pre-filing conference, right, and your folks send some letters to plaintiff's counsel that say, hey, you've got the wrong registration. And you argue that at that point, at least, they're on notice that this suit is not going to prevail. Would things be different if they had withdrawn the lawsuit at that point in terms of reasonableness, that factor? I'm not quite sure I understood the question. So you argue that one of the things you argue is, hey, in the pre-filing conference process, you all sent letters to plaintiff's counsel notifying them expressly, you do not have a copyright in the musical work as opposed to the sound recording, right? That's one of your arguments. That's correct. That they are on notice and that that is part of the argument that fees are appropriate here, right, that they were expressly on notice of the frivolity or meritlessness of the claim. That's correct. So my question is, let's say upon receiving that letter, counsel and plaintiff consulted and said, I think they're right, we blew it, and withdrew the complaint. How would that alter the calculus here? I'm trying to figure out how much are you relying on this idea of notice, express notice? Well, it's a function of this, but the point is that if they had withdrawn the action, we wouldn't have incurred any further fees. They would have either filed the correct registration and we would have proceeded on, and Judge Marrero would have found on the nonsubstantial similarity aspect and we would have won there. But if they've withdrawn it, what I'm asking you is, would fees still be awardable or is that the magic bullet that you're letting them know, hey, this is meritless? We would not have been because we would not have been a prevailing party at that point or one that would have pursued fees at that early stage. Okay. Thank you. The standard that this court undertakes this appeal is abuse of discretion. Mr. Grimm attempts to argue that it is de novo, but that clearly is not the case. And Judge Merriam, you are absolutely correct. They have brought up the issue of prevailing party in the appeal for the first time. It was not argued when we presented the motion in the first instance before Judge Marrero. So that issue cannot be raised now on appeal. And the record site that I have is docket number 62.1 at 27. But putting that aside, even if they had not raised it, this is still a determination that entitles the defendants to prevailing party fees. There is numerous case law in the Southern District in which a fee award was based upon a dismissal based on solely the lack of registration. And that's, in the brief, the Pickett case, the Springer case, the Compass case, the Ernst case. This is not something new. Do you want to address the plaintiff's argument that the judge did not adequately assess the financial burden on the plaintiff in awarding the fees? Certainly. That's just where I was going. I think Your Honor has pointed out, in numerous instances, where Judge Marrero actually considered the financial means of the respective parties. In fact, when the judge was articulating the basis, the very methodical review he took of the fee award of the three firms that were involved, he broke it down into three different segments. One had to do with the deficiencies in the billing records. The next was equitable considerations. And it was in equitable considerations that the judge was looking at the financial disparity between the parties. So taking the first issue, the deficiencies, the judge reduced all fees by 20%. That was after he identified the reasonable rate to be the rate that my firm had charged throughout the course of the case. We were the lead counsel in the case. And that hourly rate was used across the board. Then he took the issue of the deficiencies that he found in the billing records, reduced it by 20%. When he got to the equitable considerations, considering the letter that Mr. Grimm's client had presented and the affidavit that he had presented, he reduced it by another 25%. The judge also deducted out the cost that we incurred in the appeal and left it for this court. And I tell you, we are not pursuing those fees presently. And finally, what the judge did in looking at the fee motion itself, he reduced that. He did that by taking the amount that he had awarded to each firm and granted each of us 10% of that amount toward the cost of putting together the fee motion. Overall, the judge reduced the fees by 70%. Now, I submit to your honors that each of the firms, Prior Cashman, my firm, and Quinn Emanuel, we spent every hour that we billed on this case. This was a simple case in terms of the circumstance of registration, but the plaintiff would not end his battle to pursue this matter on the defective registration, which required us to present multiple submissions to Judge Marrero. It required back and forth, and all firms were consolidating. But we all accepted what Judge Marrero had decided, and we were prepared to move forward with that, but that still wasn't good enough for Mr. Grimm's client. He not only appealed the decision that Judge Marrero granted us the win, he also appealed the order for fees. This is a case that just will not end, and it was a case that could have been corrected at the very earliest stages so that Mr. Grimm's client could have had a hearing on the merits, or he could have just walked away and recognized that he made the wrong choices when he made his registration and did not have the ability to pursue this case. I think your friend on the other side is arguing secondarily that even after all those discounts that the award was still financially ruinous, and that itself can constitute an abuse of discretion because it, I guess, reflects a failure to weigh the financial means as part of the calculation. What's your response to that? Judge Marrero made a statement in his decision, which was a very lengthy decision on a copyright issue regarding fees, 33 pages, in meticulous detail, every aspect of it. But he said this, that he remarked that the far smaller fee awarded to defendants would adequately deter appellant and would send a general deterrence message and still meaningfully compensate defendants. I think that captures the entire case. He not only considered the financial status of Mr. Grimm's client, but he also undertook the other purposes of the Copyright Act, which are to deter people from bringing claims that are not valid, justified, or proper, and to compensate those, such as the clients that I represent, who are forced to defend actions that have no validity. This case has been going on for five years, and it's about a song that sounds nothing like Mr. Grimm's client's song. Thank you, counsel. Thank you, Your Honor. We'll hear rebuttal.  Thank you, Your Honors. Opposing counsel said there were three absolute truths, but there were actually falsehoods. So first, I would point out, there is no dispute that Mr. Nassoka has complete ownership of the songs. Now, what we're talking about is registration versus ownership. They're fundamentally different concepts. Second, and I believe, so first, second falsehood, he said he didn't have a registration. Mr. Nassoka did have a registration in the sound recording. It was just an administrative check, the wrong box. And I believe, and it's subject to judicial notice, he does have the musical work registration now. So he's gone and fixed the problem. To the second issue, I think, about the letter. He got a letter from a defense counsel challenging his position. Has counsel researched the issues? There's SDNY cases that are directly on point on the exact issue in his favor. Is that an unreasonable position to follow what other SDNY judges have said? I don't think so. And I don't think, I think it would be, and that's why I think this is such an extreme decision below. Literally, Mr. Nassoka's trial counsel, when he got those pre-litigation letters, is following what SDNY is saying that, yes, he can proceed on this. So should he be ruined because, financially ruined because his trial counsel researched the law? There's no appellate opinions whatsoever. And his trial counsel finds SDNY decisions that are directly on point and directly in his favor on that question. And then I think what's really important here is there was no dispute, there was no decision or disposition ultimately on the merits because the, because what happened here is it turned into a procedural dispute on a registration issue. So all of those, but I think the key things to keep in mind is there is no dispute on ownership. Mr. Nassoka owns these works. There's absolutely no dispute. The dispute is over whether it was registered. This Court has resolved that question. And I believe he has gotten registration, he came to court with a registration, and SDNY decisions all suggested that he could proceed on his case. So thank you, Your Honors. I would respectfully request that you, even if you do not reverse, that you would remit it to something in line with what is the usual course in this circuit, not something that's an extreme outlier. Thank you so much. Thank you, counsel. Thank you both. Take the case under advisement. The next argument will be in United States v. Phil Kluge, case number 24-767. Mr. Brissenden. Good morning. Matthew Brissenden for Mustafa Gokul. We've argued in our brief that this Court should vacate Mr. Gokul's conviction for at least three reasons, number one being the error in seating juror number 30, number two being the insufficiency of the evidence with respect to count two, and number three being the supplemental charge, which the district court gave after defense counsel concluded his summation. And with the Court's permission, I'd like to pick up with that third point, if I could. Mr. Gokul was charged with operating an unlicensed money-transmitting service. But under the applicable statute and the regulations, it's crystal clear that there are two aspects to that definition. It includes both the acceptance of funds and the outgoing transmittal of funds to a third party or remote location. And sitting in a car with an undercover agent, accepting Bitcoin, and handing cash to that individual clearly doesn't fit within the definition of a money-transmitting service. And so counsel was completely within his rights to advance this argument in summation, to argue that the government failed to demonstrate money transmission. And the lower court erred when it stepped in and decided to provide a supplemental instruction. And it erred for two reasons. Number one, it denied Mr. Gokul the right to have advanced notice of the instruction that was going to be provided to the jury. But number two, and I think more importantly, is that the instruction was fundamentally mistaken. And it provided the jury what was essentially an infirm path to conviction. That is the notion that they could convict based on this concept, that accepting Bitcoin and handing somebody cash constitutes a money-transmission service. What if it was a foreign currency exchange? So instead of Bitcoin, they were doing, you know, euros and dollars. Right. So if you take a step back, the statute refers to money transmission, money-transmitting business, right, which then has multiple sort of subsets underneath it. One of those is currency exchange. But the definition of currency exchange relates only to foreign fiat currency, actual currency of a sovereign nation. So while currency exchange could be covered, if that's what he had been engaged in, that that is not what he was engaged in, what we had here instead was virtual currency. And FinCEN has been very clear that virtual currency is not covered. So that part, your argument, I guess, is there's two parts to it. One is that that does not encompass virtual currency. And two, that that does not require the outgoing transmittal, which just the transmittal piece does. Is that right? Yeah. I mean, what I say is this definitely doesn't fall under currency exchange. And I'm confident of that. OK. Let me ask it this way, then. If it were just foreign currency exchange, would that still require an outgoing transmittal, as your argument? It's not necessarily an issue that I've researched in depth because I think this is very clearly not foreign currency.